IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

MOHAMMED MOHSHIN CHOWDHURY,
    Plaintiff,

v.                                            Civil No. 3:21cv799 (DJN)

MERRILL LYNCH, PIERCE,
    FENNER & SMITH INC.,
    Defendant.

## MEMORANDUM ORDER
### (Compelling Arbitration, Dismissing Case, Denying Sanctions, Denying Remand, and Denying Leave to File Surreply)

This matter comes before the Court on the following motions:

(1) Defendant Merrill Lynch, Pierce, Fenner & Smith Inc.'s ("Defendant") Motion to Compel Arbitration and Stay This Action Pending Arbitration (Mot. to Compel Arbitration) (ECF No. 4).)

(2) *Pro se* Plaintiff Mohammed Mohshin Chowdhury's ("Plaintiff") Motion for Sanctions (Mot. for Sanctions (ECF No. 7));

(3) Plaintiff's Motion for Remand to Henrico County Circuit Court (Mot. for Remand (ECF No. 8)); and,

(4) Plaintiff's Motion for Leave to File Surreply in Opposition to Defendant's Motion to Compel Arbitration (Mot. for Leave to File Surreply (ECF No. 16)).

For the reasons set forth below, the Court hereby GRANTS IN PART Defendant's Motion to Compel Arbitration (ECF No. 4) and COMPELS ARBITRATION as to Plaintiff's claims that arise from the 7553 Account. It also DENIES Plaintiff's Motions for Sanctions, for Remand and for Leave to File a Surreply (ECF Nos. 7-8, 16). Finally, it DISMISSES WITHOUT PREJUDICE this action.

# I.     BACKGROUND

In considering Defendants' Motions to Compel Arbitration, the Court may consider materials outside of the pleadings, including all relevant, admissible evidence submitted by the parties. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citations omitted); *see also Berkely Cnty. Sch. Dist. V. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) ("[In deciding a motion to compel arbitration], the court is entitled to consider materials other than the complaint and its supporting documents."). "In doing so, the court must draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229 (citations omitted).

## A.     Factual Background

Defendant, which has its headquarters in New York and its place of incorporation in Delaware, serves as a securities broker-dealer, registered with the Financial Industry Regulatory Authority ("FINRA") as a member firm.  (Notice of Removal ¶ 6 (ECF No. 1); Mem. of Def. in Supp. of Its Mot. to Compel Arbitration ("Def.'s Mem. in Supp. of Mot. to Compel Arbitration") Ex. 1 ("Nolan Decl.") ¶ 1 (ECF No. 5).)  On October 12, 2011, Plaintiff, a Virginia citizen, opened a Merrill Lynch Direct Account with Merrill Edge ("the 7553 Account"), and in doing so, he electronically executed a Client Relationship Agreement in which he agreed to arbitrate any claims against Defendant before FINRA.  (Notice of Removal ¶ 6; Nolan Decl. Ex. B ("Pl.'s Agreement") § 7 (ECF No. 5-1).)  Similarly, Defendant's records reflect that Rosy Chowdhury — Plaintiff's wife, according to Defendant's books and records — also opened a Merrill Edge Self-Directed Investing Account with Merrill Edge ("the 9U27 Account") and executed a Client Relationship Agreement with the same arbitration clause.  (Nolan Decl. ¶ 5, Ex. D § 11 ("Mrs. Chowdhury's   Agreement").)       Both   Client   Relationship   Agreements   stated   that:

> You agree that all controversies that may arise between us be determined by arbitration. Such controversies include, but are not limited to, those involving any transaction in any of your accounts with Merrill Lynch or the construction, performance or breach of any agreement between us, whether entered into or occurring prior, on or subsequent to the date hereof.
>
> Any arbitration pursuant to this provision shall be conducted only before the [FINRA] or an arbitration facility provided by any other exchange of which Merrill Lynch is a member, and in accordance with the respective arbitration rules then in effect in FINRA or such other exchange.

(Pl.'s Agreement § 7; Mrs. Chowdhury's Agreement § 11.)

On November 15, 2021, Plaintiff brought this action against Defendant in the Henrico County Circuit Court. (Notice of Removal ¶ 1.) On November 30, 2021, Defendant was served. (Notice of Removal ¶ 2.) Defendant timely removed this case from state court to this Court. (Notice of Removal ¶ 6.) In his Complaint, Plaintiff challenges certain margin calls that Defendant made regarding the 7533 and 9U27 accounts. (Compl. ¶¶ 3-30.) Plaintiff alleges claims for breach of trust; unjust enrichment; and negligent, reckless and intentional breach of fiduciary duty. (Compl. ¶¶ 31-47.) He requests injunctive relief and $500,000,000 in damages. (Compl. at 8.)

**B.    Procedural Background**

On December 28, 2021, Defendant filed the Motion to Compel Arbitration, arguing that the Court should compel arbitration and stay this action pending arbitration. (Def.'s Mem. in Supp. of Mot. to Compel Arbitration at 5-11.) Plaintiff filed his response on December 30, 2021. (Pl.'s Ans. to Def.'s Mot. to Compel Arbitration ("Opp'n to Mot. to Compel Arbitration") (ECF No. 6).) Defendant replied on January 4, 2022, rendering that Motion ripe for review. (Reply (ECF No. 9).)

In the meantime, Plaintiff also moved for leave to file a Surreply in support of his Opposition to Defendant's Motion to Compel Arbitration. (Mot. for Leave to File Surreply (ECF

No. 16).)  Additionally, he filed a Motion for Sanctions (ECF No. 7) and a Motion to Remand this case to the Henrico County Circuit Court (ECF No. 8).  Defendant responded to both of these Motions.  (Br. of Def in Opp'n to Pl.'s Mot. to Remand ("Opp'n to Mot. to Remand") (ECF No. 17); Br. of Def. in Opp'n to Pl.'s Mot. for Sanctions ("Opp'n to Mot. for Sanctions") (ECF No. 18).)  Plaintiff replied in support of his Motion for Sanctions but did not reply in support of his Motion for Remand, and his time to do so has expired.  (Reply Br. of Pl. in Supp. of Mot. for Sanctions (ECF No. 19).)

## II.   MOTION TO COMPEL ARBITRATION AND FOR STAY PENDING ARBITRATION

### A.   Standard of Review

The FAA embodies "a liberal federal policy favoring arbitration agreements," and it "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Through the FAA, Congress sought "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place [them] upon the same footing as other contracts." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

To that end, the FAA provides that, in contracts involving interstate or foreign commerce, a written agreement to arbitrate a controversy "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §§ 1-2.  If one party to such a contract files suit, the opposing party may move to stay the proceedings and compel arbitration as provided in the parties' arbitration agreement.  9 U.S.C. §§ 3-4.

Courts follow a two-step inquiry to determine whether to compel arbitration in a dispute. *Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 101 (4th Cir. 2012) (citation omitted).

First, the court must "determine *who* decides whether a particular dispute is arbitrable: the arbitrator or the court." *Id.* (emphasis in original). "The scope of arbitrable issues is 'to be decided by the court, not the arbitrator, '[u]nless the parties clearly and unmistakably provide otherwise.'" *Speight v. Lyft, Inc.*, 2021 WL 298192, at *3 (E.D. Va. Jan. 28, 2021) (quoting *Summer Rain v. Donning Co./Publ'rs, Inc.*, 964 F.2d 1455, 1459 (4th Cir. 1992)).

Second, if the court answers the first question in favor of itself, then the court must decide whether the dispute is arbitrable. *Id.* Under this prong, the party opposing arbitration bears the burden of showing that the court should not compel arbitration. *Speight*, 2021 WL 298192, at *4 (citing *Green Tree Fin. Corp.*, 531 U.S. at 91)). Federal courts in the Fourth Circuit "'apply ordinary state law principles that govern the formation of contracts' . . . and the 'federal substantive law of arbitrability.'" *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000) (first quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); and then quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24). If the court concludes that the parties agreed to arbitrate the particular dispute, then the FAA leaves courts no discretion, "but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3-4).

**B.    Analysis**

      *1.    The Court will compel arbitration of Plaintiff's claims regarding the 7553 Account and will dismiss Plaintiff's claims regarding the 9U27 Account.*

The Court will compel arbitration for claims arising out of the 7553 Account but not the 9U27 Account.  As a threshold matter, neither party contests the first prong of the test for arbitrability outlined above, and the arbitration provisions do not explicitly provide for an arbitrator to decide the scope of arbitrable issues.  (Pl.'s Agreement § 7; Mrs. Chowdhury's Agreement § 11); *see Speight*, 2021 WL 298182, at *3 (noting that first question in the arbitrability analysis concerns whether the court or the arbitrator should decide the scope of arbitrable issues).

Turning to the second prong, the FAA governs the arbitration agreements at issue.  The FAA provides in relevant part that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2. Because both the Client Relationship Agreements in this case constitute securities brokerage account agreements, they involve commerce and thus fall under the FAA's scope.

Second, Plaintiff's claims fall under the scope of the arbitration provisions in the Client Relationship Agreements, which require that "all controversies" between Plaintiff and Defendant must go to arbitration.  (Pl.'s Agreement § 7; Mrs. Chowdhury's Agreement § 11.)  As for the 7553 Account, Plaintiff signed the relevant Agreement, and Plaintiff's claims constitute a controversy between him and Defendant.  His claims regarding that Account therefore fall under the arbitration provision of his Client Relationship Agreement, and the Court will compel arbitration of them.

However, Plaintiff has not established that he has standing to sue on the 9U27 Account and its Client Relationship Agreement, and the Court will dismiss his claims as to that Account. Defendant asserts that Plaintiff acted as an agent for Mrs. Chowdhury in connection with the 9U27 Account by engaging in trading activity in that Account and bringing this action against Defendant based on Defendant's handling of margin calls in that account.  (Def.'s Mem. at 9.)  For that reason, Defendant argues that it may enforce the arbitration provision that pertains to the 9U27 Account against Plaintiff, despite his status as a nonsignatory to the Account's Client Relationship Agreement.  (Def.'s Mem. at 9.)

The Court disagrees, as it cannot ascertain whether Plaintiff acted as an agent for Mrs. Chowdhury and whether he has standing to bring claims on her behalf regarding the 9U27 Account.  Of course, "it is 'well-established'" in the Fourth Circuit that "in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties."[1] *Meridian Imaging Sols, Inc. v. OMNI Bus. Sols. LLC*, 250 F. Supp. 3d 13, 23 (E.D. Va. 2017) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416-17 (4th Cir. 2000)).  For example, pursuant to "traditional principles of contract and agency law," agents become bound to contractual provisions — such as arbitration agreements — that cover their principals.  *Id.*  To form an agency relationship, the principal must "manifest[] assent to" an agent "that the agent shall act on the principal's behalf and subject to the principal's control."  Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006); *see Wilson*

---

[1]    "[S]tate law determines questions concerning the validity, revocability, or enforceability of contracts generally, but the Federal Arbitration Act . . . create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. Because the determination of whether [Plaintiff], a nonsignatory, is bound by the contract presents no state law question of contract formation or validity, we look to the federal substantive law of arbitrability to resolve this question." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

*v. PL Phase One Ops. L.P.*, 422 F. Supp. 3d 971 (D. Md. 2019) (noting that the Restatement of Agency provides the basis for the federal common law of agency).   An essential element of agency is the principal's right to control the agent's actions.  Restatement (Third) of Agency § 1.01.

Here, no evidence suggests that Plaintiff and Mrs. Chowdhury maintained an agency relationship in connection with the 9U27 Account.  At most, the parties' filings indicate that Mrs. Chowdhury signed the relevant Client Relationship Agreement, and Plaintiff managed this Account. Nothing in the record suggests that Mrs. Chowdhury consented to Plaintiff acting on her behalf in connection with the 9U27 Account or this lawsuit, or that she had control over his activities.  For that reason, the Court cannot find that an agency relationship between the two of them existed as it pertained to the 9U27 Account.  Plaintiff simply constitutes a third party to the 9U27 Client Relationship Agreement and therefore lacks standing to sue regarding that Account. Restatement (Second) of Contracts § 315 (Am. L. Inst. 1981) (noting that third-party, incidental beneficiaries of a contract cannot sue to enforce the contract).  Because Plaintiff has failed to establish standing on the 9U27 Account, the Court lacks jurisdiction to rule on or compel arbitration as to Plaintiff's claims regarding that account.  Thus, while the Court will compel arbitration of Plaintiff's claims regarding the 7553 Account, the Court must dismiss Plaintiff's claims regarding the 9U27 Account.[2]

---

[2]     In asking the Court to compel arbitration with respect to the 9U27 Account, Defendant asks the Court to assume that Plaintiff has standing to adjudicate Plaintiff's claims as to that account.  However, the Court cannot make such an assumption. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (disapproving of assuming jurisdiction to decide merits issues).

2.    ***Because the Court will compel arbitration as to Plaintiff's claims regarding the 7553 Account, it will also dismiss this action.***

Because the Court will compel arbitration as to the claims regarding the 7553 Account and dismiss Plaintiff's claims as to the 9U27 Account, the Court will dismiss this action. Section 3 of the FAA requires courts to stay actions "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under [an arbitration agreement]." 9 U.S.C. § 3. However, the Fourth Circuit has held that district courts may dismiss an action "when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001). The Fourth Circuit has acknowledged that its *Choice Hotels* decision conflicts with Section 3 of the FAA and its previous holding that the FAA requires a stay when a federal court compels arbitration pursuant to a valid agreement, but nonetheless has declined to resolve the dispute. *Noohi v. Toll Bros.*, 708 F.3d 599, 605 n.2 (4th Cir. 2013). In response, courts in this District routinely dismiss cases after compelling arbitration. *See, e.g., Clarke v. Guest Servs., Inc.*, 2022 WL 567836, at *1 (E.D. Va. Feb. 24, 2022) ("Whether to stay or dismiss a fully arbitrable lawsuit is within the discretion of the district court.") Because the Court will compel arbitration as to the 7553 Account and dismiss the claims as to the 9U27 Account, it will also dismiss this action in its entirety pursuant to *Choice Hotels*.[3]

### III.    PLAINTIFF'S MOTION FOR REMAND

The Court will also deny Plaintiff's Motion to Remand this case to the Henrico County Circuit Court, in which he moves to remand this case to state court on the grounds that Defendant improperly removed it from state to federal court (Mot. for Remand ¶¶ 3-7).

---

[3]    Because Plaintiff's Surreply in support of his Opposition to the Motion to Compel Arbitration (ECF No. 11) primarily constitutes a reiteration of Plaintiff's previous assertions, the Court will deny him leave to file a surreply.

Under 28 U.S.C. §§ 1441(a),

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

The Notice of Removal must contain "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a). Pursuant to § 1446(b),

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

For cases removed based on diversity jurisdiction, § 1446(c) permits removal within one year after the commencement of the action. § 1446(c)(1). Finally, § 1447(c), which governs motions to remand, states that:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Defendant properly removed this case based on diversity jurisdiction. 28 U.S.C. § 1332(a) provides that the Court may exercise diversity jurisdiction in suits between citizens of different states when the matter in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Diversity jurisdiction applies only when there exists complete diversity, meaning that "each defendant is a citizen of a different State from each plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis removed). Here, Plaintiff has citizenship in Virginia, and Defendant has citizenship in Delaware, its state of incorporation, and New York, its headquarters, making the parties completely diverse. (Notice of Removal ¶ 5.)

Further, Plaintiff demands $500,000,000 in damages, which exceeds the required amount in controversy. (Compl. at 8-9.) For these reasons, the Court has diversity jurisdiction over this matter.

Furthermore, Defendant timely removed this case. Plaintiff filed his Complaint against Defendant in state court on November 15, 2021. (Notice of Removal ¶ 1.) Defendant was served with a summons and copy of the Complaint on November 30, 2021. (Notice of Removal Ex. A at 2-3 (ECF No. 1-1).) Defendant filed its Notice of Removal on December 21, 2021, meaning that it filed its Notice within the 30 days that § 1446(b) permits. (Notice of Removal at 3.) Additionally, Defendant filed a Notice of Filing for Removal in the Henrico Circuit Court on December 21, 2021, and served the Notice on Plaintiff the same day. (Def.'s Opp'n to Mot. for Remand Ex. A ("Notice of Filing for Removal") at 2 (ECF No. 17-1).) For these reasons, the Court will deny Plaintiff's Motion for Remand (ECF No. 8).[4]

---

[4]     Plaintiff bases his arguments for remand on specious claims regarding the formatting of the documents that Defendant appended to its Notice of Removal and inapposite cases. (Mot. for Remand ¶ 3 (first citing *Merrill Lynch, Pierce, Fenner & Smith Inc. et al. v. Manning*, 578 U.S. 374, 379 (2016) (reversing and remanding denial of plaintiff's motion to remand, because of lack of federal question jurisdiction); *Goldstein v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 416 F. Supp. 798, 799 (N.D. Ill. 1976) (remanding for lack of federal question jurisdiction); *In re Cnty. of Orange*, 191 B.R. 1005, 1024 (Bankr. C.D. Cal. 1996) (denying motion to dismiss for failure to state a claim). Among other contentions, Plaintiff takes issue with co-counsel for Defendant, David Libowsky, whom he claims misled him into believing that Defendant would not remove this matter. (Mot. for Remand ¶ 4.) Plaintiff bases this argument on a letter that Libowsky sent to Plaintiff requesting that Plaintiff "submit his claims against [Defendant] to arbitration before FINRA Dispute Resolution and stay the Henrico County Circuit Court claims against [Defendant] pending completion of the arbitration." (Mot. for Remand ¶ 4; Def.'s Mem. in Supp. of Mot. to Compel Arbitration Ex. 2 ("Libowsky Decl."), Ex. 1 ("Libowsky Letter") at 2 (ECF No. 5-2).) Libowsky's letter cannot be construed as misleading. The letter simply advised Plaintiff that if he did not stay his state court case, Defendant would move to compel arbitration. That Defendant first exercised its right to remove the case before moving to compel arbitration does not render the letter misleading.

## IV.   PLAINTIFF'S MOTION FOR SANCTIONS

Finally, the Court will also deny Plaintiff's Motion for Sanctions (ECF No. 7).  Plaintiff argues that Defendant removed this case "for an improper purpose to harass, cause unnecessary delay and needlessly increase the cost of litigation," and that Defendant based its Motion to Compel Arbitration "on questionable documents and arbitration agreements which [are] not valid and not enforceable."  (Mot. for Sanctions ¶¶ 1, 3.)  He insists that the Client Relationship Agreements that Defendant submitted as Exhibits have formatting irregularities that make them "suspicious and questionable."  (Mot. for Sanctions ¶ 3(d).)  Again, he asserts that Libowsky misled him in the letter advising him that Defendant intended to compel arbitration if Plaintiff did not stay the state court action.  (Mot. for Sanctions ¶ 7; Libowsky Letter at 2.)

Federal Rule of Civil Procedure 11(b) states that an attorney or unrepresented party who submits a filing to the Court certifies that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11(c) permits courts to impose sanctions on any attorney, law firm or party that violates Rule 11(b).

Here, Plaintiff has presented no evidence that Defendant removed this action for an improper purpose, and he merely makes unfounded arguments that the Client Relationship

Agreements at issue were "suspicious sand questionable." (Mot. for Sanctions ¶ 7.) Moreover, the cases that Plaintiff cites do not bear relevance to this action. (Mot. for Sanctions at 4 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (permitting federal courts to use their inherent power to impose attorney's fees as a sanction for bad-faith conduct when other provisions do not cover the conduct at issue); then citing *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1442 (11th Cir. 1985) (affirming award of sanctions for discovery violations under Rule 37 and 28 U.S.C. § 1927 and remanding to require district court to provide support for the amount of sanctions); then citing *Malaeutea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542-47 (11th Cir. 1993) (affirming award of sanctions under Rules 37 and 26(g)); and then citing *Poole ex rel. Elliot v. Textron, Inc., et al.*, 192 F.R.D. 494, 499-505 (D. Md. 2000) (awarding sanctions under Rule 37 and Rule 26(g)).) For these reasons, the Court will deny Plaintiff's Motion for Sanctions (ECF No. 9).

## IV.    CONCLUSION

For the reasons set forth above, the Court hereby:

(1)   GRANTS IN PART Defendant's Motion to Compel Arbitration (ECF No. 4) and

COMPELS ARBITRATION of Plaintiff's claims arising from the 7553 Account;

(2)  DISMISSES THIS ACTION WITHOUT PREJUDICE;

(3)  DENIES Plaintiff's Motion for Remand (ECF No. 8);

(4)  DENIES Plaintiff's Motion for Sanctions (ECF No. 7); and,

(5)  DENIES Plaintiff's Motion for Leave to File a Surreply (ECF No. 16).

Let the Clerk file a copy of this Order electronically, notify all counsel of record and

forward a copy to Plaintiff at his address of record.

It is so ORDERED.

_____ /s/ _____

David J. Novak
United States District Judge

Richmond, Virginia
Dated: April 13, 2022

14